UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN RANKIN, | ) | CASE NO. 5:20-cv-00436 |
| | ) | |
| *On behalf of himself and all others* *similarly situated,* | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | KATHLEEN B. BURKE |
| | ) | |
| *v.* | ) | **JOINT MOTION FOR APPROVAL** |
| | ) | **OF SETTLEMENT PURSUANT TO** |
| INCEPT CORPORATION, *et al.,* | ) | **SECTION 216(b) OF THE FLSA** |
| | ) | |
| Defendants. | ) | |

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Agreement of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and Opt-In Plaintiffs (also collectively referred to as "Plaintiffs") that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-In Plaintiffs who submit a consent form pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) representing a substantial percentage of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1: *Agreement of Settlement and Release* ("Settlement Agreement");

Exhibit 2: Proposed Final Order and Judgment Approving Settlement and Dismissing Action;

Exhibit 3:       Exhibit A to Settlement Agreement –
                 Notice to Potential Opt-In Plaintiffs ("Notice");

Exhibit 4:       Exhibit B to Settlement Agreement –
                 Consent to Join Claim Form & Release ("Consent Form");

Exhibit 5:       Declaration of Plaintiffs' Counsel; and

Exhibit 6:       General Settlement and Release Agreement of
                 Representative Plaintiff.

The attached Memorandum in Support explains the nature of the Action, the negotiations,

the principal terms of the Settlement, and the propriety of approving the Settlement and its

proposed distributions of settlement proceeds.

Respectfully submitted,

*s/ Kevin M. McDermott II*                          *s/ Amanda L. Walls (via email consent)*
Joseph F. Scott (0029780)                           Amanda L. Walls (Ohio Bar #0080195)
Ryan A. Winters (0086917)                           AWalls@PetersonMyers.com
Kevin M. McDermott II (0090455)                     P. O. Box 24628
SCOTT & WINTERS LAW FIRM, LLC                       Lakeland, FL 33802-4628
The Caxton Building                                 Telephone: (863) 683-6511
812 Huron Rd. E., Suite 490                         Facsimile: (863) 682-8031
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313               *Attorneys for Defendants*
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................... iv

Memorandum in Support ............................................................................................. 1

I.      The Litigation ................................................................................................... 1

      A.     The Claims and Issues ......................................................................... 1

      B.     Conditional Class Certification Stipulation for Settlement and Mediation ........... 3

      C.     Discovery and Document Analysis ...................................................... 3

II.     The Negotiations ............................................................................................. 4

III.    The Terms of the Settlement and Release of Claims ...................................... 5

      A.     The Scope of Settlement ..................................................................... 5

      B.     The Settlement Payments and Distributions ....................................... 5

IV.    The Propriety of Approval .............................................................................. 8

      A.     The Seven-Factor Standard is Satisfied ............................................. 8

      B.     The Settlement Payments Are Fair, Reasonable, and Adequate.......... 12

      C.     The Service Award to the Plaintiff is Proper and Reasonable............ 12

      D.     Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable ........ 14

V.     Conclusion ..................................................................................................... 17

Certificate Of Service ................................................................................................ 18

Certificate Of Compliance with Page Limitation Requirements .................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053 (Nov. 18, 2019) ................................................................................................... 13

*Blum v. Stenson*, 465 U.S. 886 (1984) ......................................................................................... 14

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) .................................................................. 15

*Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015) .... 15

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237 (Oct. 4, 2017) ................................................................................................................ 9

*Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499 (Oct. 23, 2008) ............................................... 9, 12

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................................................ 13

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) .................................................. 9

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010) .............................................................................................. 13, 15

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ......................................................................... 14

*Fincham v. Nestle Prepared Foods Co.*, 1:08-CV-73 (N.D. Ohio 2008) .................................... 15

*Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334 (Sep. 23, 2019) ................................................................................................................ 14

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922 (June 24, 2011) ............................................................................................ 9

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) .......................................... 10

*Guzman v. Chipotle Mexican Grill, Inc.*, N.D.Cal. No. 17-cv-02606-HSG (KAW), 2018 U.S. Dist. LEXIS 198933 (Nov. 21, 2018) .................................................................... 4

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) .......................................................... 10

*Harris v. Best Buy Stores, L.P.*, 2017 U.S. Dist. LEXIS 145936, 2017 WL 3948397 (N.D. Cal. Sept. 8, 2017) ................................................................................................................ 4

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622 (Oct. 22, 2019) ...................................................................................................... 8, 9, 14

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ........................................ 10

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................................................................................... 12, 13

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997).......................... 13

*Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................................................................................................... 9

*Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009)....................................................................................................................................... 15

*Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D.Ohio Jan. 26, 2017) ........................................................................................................... 8

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June 16, 2008)............................................................................................................................................. 8

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).................................. 8

*McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007).............................. 15

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................ 12

*Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D.Ohio May 4, 2018) .............................................................................................. 9, 13, 15

*Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544 (6th Cir.1985).......... 14

*Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993)........................................ 15

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 398146 (N.D. Ohio August 22, 2008)..................................................................................................... 10

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) ............................................................................ 14

*Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912(June 15, 2010)......................................................................................................... 7, 15

*Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018)......................................................................................... 13

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017)....................................................................................................................... 9, 11

*Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517 (Dec. 29, 2014)................................................................................................................ 9

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450 (July 11, 2014) ........................................................................................................................... 16

*Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448 (S.D. Ohio Feb. 26, 2016) .......................................................................... 16

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495 (6th Cir.1984) ........................................... 14

**Statutes**

29 U.S.C. § 216 ...................................................................................................................... 2, 14

O.R.C. § 4111.10 ........................................................................................................................ 14

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................................... 2

**Regulations**

29 C.F.R. § 785.48 ................................................................................................................... 2, 3

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     <u>THE LITIGATION</u>**

**A.  The Claims and Issues**

Plaintiff Stephen Rankin filed this Action on behalf of himself and all others similarly situated in the United States District Court for the Northern District of Ohio, Eastern Division on February 25, 2020. (ECF #1.) Plaintiff's Complaint alleged that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id.* at ¶¶ 18-44.) Defendants filed an Answer to Plaintiff's Complaint, denying all liability under any of Plaintiff's claims. (*See* ECF #4.)

Defendants are a telemarketing company that operate a call center at 4150 Belden Village St. NW #205, Canton, OH 44718 (the "Belden Village location"). From there, Defendants employ approximately 400 "conversational marketing experts" and other employees with similar job titles or positions (collectively, "CMEs") at any one given time. CMEs at the Belden Village location are paid based on their clock-in and clock-out times which are subject to a rounding policy built into the timekeeping system. Plaintiff contends that CMEs, including the Named Plaintiff and other Opt-In Plaintiffs, performed compensable work before and after their shifts for which they were not paid, and that the rounding system virtually always favors Defendants and virtually always works to the detriment of the CMEs. The Parties hotly dispute whether there was any unpaid pre-shift and post-shift time, let alone the duration of the unpaid pre-shift and post-shift time.

Plaintiff further contends that CMEs perform an array of different compensable activities during this unpaid pre-shift and post-shift time, including logging into and accessing Defendants'

1

various computer systems, databases, and programs, and that CMEs were required by policy to arrive and be ready to work approximately 5 minutes before their shift starting time. Defendants believe that CMEs performed no pre-shift and post-shift compensable work, that CMEs were properly paid for all time worked, and even if they did perform any compensable work during the pre-shift and post-shift periods that were rounded, any such time was *de minimis.* Defendants further believe that, even if compensable pre-shift and post-shift work occasionally occurred as to the Plaintiffs, the individualized analysis required as to each potential class member would warrant a denial of any 29 U.S.C. § 216(b) or Fed. R. Civ. P. 23 motion. Moreover, Defendants contend that the timeclock rounding policy was facially neutral and complied with the FLSA, 29 C.F.R. § 785.48(b).

Plaintiff also contends that CMEs received certain bonus/incentive pay which was not properly included in the regular rate for purposes of computing overtime owed. Defendants assert that bonus/incentive pay was included in the regular rate for all but a *de minimus* number of instances when a modest amount of incentive pay was paid on an irregular basis to a select subset of CMEs assigned to a particular project. Defendants further assert that this type of incentive pay rarely occurred during weeks in which overtime was worked, and that the individualized analysis required as to each potential class member would warrant denial of any 29 U.S.C. § 216(b) or Fed. R. Civ. P. 23 motion.

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the Ohio wage claim should proceed to trial on a classwide basis under Fed. R. Civ. P. 23, and that the FLSA claim should proceed on a collective basis under 29 U.S.C. § 216(b); (2) prove that each CME really performed pre-shift and post-shift compensable work each day, in addition

to the amounts of these times, and defeat Defendants' argument that the amount of off-the-clock work Plaintiffs allege, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence; (3) defeat Defendants' argument that any unpaid time is *de minimis* and/or that the rounding system is facially neutral and complies with the FLSA, 29 C.F.R. § 785.48(b); (4) prove that the activities associated with the alleged unpaid time are compensable because they are "integral and indispensable" to the "principle activities" of CMEs; and (5) defeat Defendants' legal and factual arguments that Defendants did not know the alleged off-the-clock work was occurring, that any violation was not willful and that Defendants are entitled to a good faith defense.

### B.  Conditional Class Certification Stipulation for Settlement and Mediation

The Parties stipulated to Conditional Class Certification for the Limited Purpose of Settlement and Mediation Discussion Only. (ECF #21, 22.) The Court granted the Stipulation on June 15, 2020. (*See id.*) As further described below, the Settlement reached in this matter encompasses an even larger putative settlement class pursuant to § 216(b) of the FLSA than the Parties anticipated in the Stipulation.

### C.  Discovery and Document Analysis

The Parties engaged in extensive discovery, and Defendants produced voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiffs. Prior to engaging in settlement negotiations, pursuant to the Parties' agreement, Defendants provided wage and hour data for a random sample set of 93 employees, or approximately 10% of Defendants' present and former CMEs who worked at least four consecutive complete workweeks during the stipulated class period February 25, 2018 - February 25, 2020. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-

3

and-hour information and data and documents. Defendants provided Plaintiffs spreadsheets containing hundreds of thousands of payroll and timekeeping records for a sample set of CMEs. Plaintiffs' damages computation considers over 750,000 data points and permits a calculation of the alleged unpaid wages for all CMEs based off a statistically significant sample of the timekeeping, workweek, and payroll records produced by Incept. Plaintiffs' Counsel's total analysis considered approximately 70% of the produced data,[1] or 7% of the total workweeks from February 25, 2018 - February 25, 2020. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.    THE NEGOTIATIONS

Settlement negotiations were contentious. In advance of the mediation, the Parties prepared and submitted mediation memoranda demands and responses addressing merits and damages issues. A mediation with Magistrate Judge Kathleen B. Burke, a very seasoned and experienced jurist and mediator, commenced on August 11, 2020. The mediation resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Exhibit 5.) Formal settlement

---

[1] During their analysis, Plaintiffs' Counsel noted that approximately 30% of the workweek hours data from the "TimePunchData" did not accurately correspond without speculation to the timeclock data contained within the "HoursByWeek" spreadsheet (825 out of 2835 workweeks provided), and/or the payroll data in the "PayrollData" spreadsheet, and/or the formatting of the data raised concerns as to calculation accuracy. Therefore, instead of estimating or averaging across these workweeks which would lead to inaccuracies in the final sample set calculations, Plaintiffs' counsel excluded these from the computations. Notably, courts have found significantly smaller sample sets statistically significant for discovery purposes. *See, e.g., Guzman v. Chipotle Mexican Grill, Inc.*, N.D.Cal. No. 17-cv-02606-HSG (KAW), 2018 U.S. Dist. LEXIS 198933, at *8-9 (Nov. 21, 2018) (approving 5 percent sampling); *Harris v. Best Buy Stores, L.P.*, 2017 U.S. Dist. LEXIS 145936, 2017 WL 3948397, at *9-10 (N.D. Cal. Sept. 8, 2017) (approving less than 5 percent sampling).

4

documents, including the Settlement Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III.     THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.     The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve disputed claims between the Parties. The Settlement will resolve federal and state wage-and-hour claims of the named Plaintiff and all other Opt-In Plaintiffs who affirmatively agree to be bound by the Settlement by signing and returning the Consent Form attached as Exhibit B to the Settlement Agreement. As highlighted below, Plaintiffs' Counsel and Defendants' Counsel believe that certification and Settlement are appropriate because the Released Claims are being compromised without the need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Plaintiffs in light of the procedural and substantive encumbrances underscored by Defendants. Named Plaintiff and Plaintiffs' Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. (*See* Exs. 1, 5.) Named Plaintiff and Plaintiffs' Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*Id*.)

### B.     The Settlement Payments and Distributions

1.     *Total Settlement Amount***.** Defendants have agreed to pay the total settlement amount of $232,500.00 as set forth in the Settlement Agreement. (Ex. 1.) That sum will be used to make settlement payments to the Plaintiff and other Opt-In Plaintiffs who submit a consent form pursuant to the FLSA, 29 U.S.C. § 216(b), which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims

released by Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of administration; (4) service award; and (5) any other obligations of Defendants under the Settlement Agreement.

        2.    *Payments to Opt-In Plaintiffs*. From the total settlement amount, $130,167.75 shall be allocated to the Opt-In Plaintiffs. The proposed method of allocating the class payments is reasonable and fair to all. Payments to Opt-In Plaintiffs are based proportionally on each Opt-In Plaintiff's respective weeks of service to Defendant Incept at the Belden Village location during the settlement period, February 25, 2017 to February 25, 2020. If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered CMEs. Based on a constant workforce of 400 CMEs, an approximate 50% projected settlement class opt-in rate, an average 4 day workweek per CME, and an average hourly regular rate of $12.20, the Settlement will provide each CME, *after deduction of attorneys' fees and expenses*, with an approximate additional 5.13 minutes of pay per day worked over the three-year period.

        The recovery for the CMEs who opt-in is significantly greater than the payments equating to several minute payouts in other Ohio lawsuits in which other call center workers sought payment for pre- and/or post-shift activities. For example, in *Kritzer*, Judge Gregory L. Frost approved a settlement in which employees' payments equated to 4 minutes of unpaid wages per day. *See Kritzer v. Safelite Solutions, LLC,* 2012 U.S. Dist. LEXIS 74994, *7 (S.D. Ohio May 30, 2012). Similarly, in *Rotuna*, Judge Sara Lioi approved a settlement in which class members recovered 25% of the damages they would have recovered by proving 8 minutes of

unpaid wages per day. *Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *21 (June 15, 2010).

Even at an opt-in rate of 100%, Opt-In Plaintiffs will still receive approximately 132.92% of the rounding overtime wage damages calculated for mediation.[2] At a more realistic opt-in rate of 50%, Opt-In Plaintiffs will receive more than 200% of their calculated damages at mediation, or 100% of their alleged overtime damages and more than 100% of their calculated liquidated damages. Inherent in the proposed distribution method in which Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiffs' respective weeks of service to Defendant Incept during the relevant period, the settlement proposal treats Opt-In Plaintiffs equitably relative to each other. Named Plaintiff Stephen Rankin, as an Opt-In Plaintiff, will participate in the recovery under the same procedure applicable to other Plaintiffs. (*See* ECF #1-4, Consent Form of Named Plaintiff Stephen Rankin.)

3.      *Service Award***.** The proposed Settlement provides for a service award to Plaintiff Stephen Rankin in the amount of $5,000 in recognition of his assistance to Plaintiffs' Counsel and his contribution to achieving the Settlement on behalf of all Opt-Ins. The proposed service award is well-earned. Among other things, Plaintiff Stephen Rankin consulted with Plaintiffs' Counsel at critical stages, attended the case management conference and the mediation, and provided important and necessary documents and information throughout the course of the litigation. His contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement.

---

[2] Plaintiffs' computation of damages for mediation purposes considered over 750,000 data points and permitted a calculation of the unpaid wages for potential Opt-Ins based off a sample of approximately 7% of the total timekeeping and payroll records from February 25, 2018 - February 25, 2020. Exporting the sample set over the putative class and over a three-year period, Plaintiffs' estimated overtime wage damages for all CMEs for mediation equated to $97,931.10, while the a total net settlement fund negotiated by Named Plaintiff and Plaintiffs' Counsel and as provided in the Settlement Agreement is $130,167.75.

4.     *Attorneys' Fees and Cost Reimbursements***.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $77,492.25. After reductions for costs and litigation expenses in the total amount of $416.00, the attorney fee recovery will equal $77,076.25, or slightly less than one third of the $232,500.00 settlement amount.  (*See* Ex. 3, Declaration of Counsel at ¶¶ 38-50.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiff and other Opt-Ins. (*See* Settlement Agreement at ¶¶ 9-11.)

## IV.     <u>THE PROPRIETY OF APPROVAL</u>

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown below, Court approval here is strongly supported by established authority.

### A.  The Seven-Factor Standard is Satisfied

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer*, 2012 U.S. Dist. LEXIS 74994,

at *19); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, this Honorable Court used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel."

(Citing *Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *3 (Dec. 29, 2014); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement.") (citing *Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (Oct. 23, 2008); *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at * 13 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008

9

WL 3981461, at *11 (N.D. Ohio August 22, 2008); citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each CME's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers performed pre-shift and post-shift compensable work each day, in addition to the amounts of these times. Defendants argued that its time clock rounding policy is both facially valid and neutrally applied; that Defendants' likelihood of success in defending against claims alleging that CMEs suffered uncompensated time at the beginning of their workdays either through off-the-clock compensable activity and/or impermissible rounding to be high; that the amount of off-the-clock work Plaintiffs allege, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence, is *de minimis*, and the alleged unpaid time is not compensable because it was not integral to the principle activities of CMEs. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Given that the factual and legal issues in this case are highly disputed and complex, there is no guarantee that

Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs to this action.

The other factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers over 750,000 data points and permits a calculation of the alleged unpaid wages for all CMEs based off a statistically significant sample of the timekeeping, workweek, and payroll records produced by Incept. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Moreover, again as noted above, even at a 100% opt-in rate, Opt-In Plaintiffs will still receive approximately 132.92% of the rounding overtime wage damages calculated for mediation; more realistically, at a 50% opt-in rate, Opt-In Plaintiffs will receive more than 200% of their calculated damages at mediation. Counsel on both sides support the Settlement, as does the Plaintiff himself. (*See* Exhibits 1, 5.)

**B.  The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Plaintiffs – at an opt-in rate of 100%, Opt-In Plaintiffs will still receive approximately 132.92% of the rounding overtime wage damages calculated for mediation; at a more realistic opt-in rate of 50%, Opt-In Plaintiffs will receive more than 200% of their calculated damages at mediation, or 100% of their alleged overtime damages and more than 100% of their calculated liquidated damages – represent a substantial percentage of the potential value of their claims, and the allocations are based on each Opt-In Plaintiff's workweeks worked during the applicable three (3) year period. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the actual amounts of the Plaintiffs' time worked and potential damages.

**C.  The Service Award to the Plaintiff is Proper and Reasonable**

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and his contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, service awards are "justified when named plaintiffs expend more time and effort beyond that of other class members … by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*,

12

175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff).

Indeed, the named Plaintiff Stephen Rankin incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Among other things, Plaintiff Stephen Rankin consulted with Plaintiffs' Counsel at critical stages; attended the May 20, 2020 Telephonic Case Management Conference (*see* ECF #15); helped Counsel prepare for mediation and attended the mediation; and provided and reviewed other important documents and information throughout the course of the litigation. Furthermore, Plaintiff Stephen Rankin faithfully represented the interests of the Plaintiffs and ably assisted Plaintiffs' Counsel. His contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $5,000.00 is reasonable and well-earned.

### D.  Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Hill*, 2019 U.S. Dist. LEXIS 182622, at *3. "[I]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)).

14

Here, Plaintiffs' Counsel seeks approval under the percentage-of-the-fund method, which has been approved by the Sixth Circuit. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).  "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6 (citing *Rotuna*, 2010 WL 2490989, at *7 (approving one-third of the common fund as attorneys' fees).

As noted in *Osman*, one-third of the common fund "is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 WL 2490989, at *8; *Dillworth v.*, 2009 U.S. Dist. LEXIS 76947; *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007)). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have accumulated. *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19.

"The lodestar figure is used to confirm the reasonableness of the percentage-of-the-fund award." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996)). A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to a multiplier of approximately 2.5. *See, e.g., Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."); *Swigart v. Fifth*

15

*Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (July 11, 2014)

(additional citations omitted); *Osman*, at *7 (citing *Thorn v. Bob Evans Farms, Inc*., No. 2:12-

CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016)

(approving 32.92 percent of the common fund when that number amounted to a 2.01 multiplier

of plaintiff's counsel's loadstar attorney's fees).

Currently, Plaintiffs' counsel has a collective 142.9 hours in this case, a fee lodestar of

$49,692.50. The breakdown is as follows: Joseph F. Scott has 20 hours at $450 per hour; Ryan

A. Winters has 15 hours at $375 per hour; and Kevin M. McDermott II has 107.9 hours at $325

per hour. Plaintiffs' counsel's multiplier is 1.55, less than that of other similar above-referenced

wage and hour cases which were approved by the district court. Significantly, Plaintiffs'

Counsel's lodestar has not been adjusted to account for the time Plaintiffs' Counsel will expend

fulfilling the obligations in the Settlement Agreement and monitoring the administration of the

Settlement. In addition to the time already expended, Plaintiffs' counsel will have substantial

time in settlement administration.  Again, the settlement includes more than 1,000 potential

settlement participants.  Notice will be sent to all potential opt-ins.  The notice lists Plaintiffs'

Counsel, Scott & Winters, as the contact for questions regarding the settlement.  Plaintiffs'

counsel has extensive experience in these matters.  Based upon prior settlements of similar size,

counsel anticipates expending on average an additional 10-15 hours each month in settlement

administration. (*See* Ex. 3, Declaration of Counsel at ¶ 48 (summarizing additional tasks to be

likely required of Plaintiffs' counsel).) Plaintiffs' Counsel therefore expects that the total

attorney hours expended at the conclusion of this matter will be approximately 203 - 233 hours, a

blended lodestar amount (based upon a blended rate of $383.33) of $77,816.67 - $89,316.67, or a

multiplier of 0.99 – 0.86. (*Id.* at ¶ 49.)

16

The timeline for settlement administration established by the parties' agreement will require the settlement administration to last a minimum of six months.  During this time, potential collective action participants will receive notice of the settlement, be given an opportunity to opt-in, and receive settlement distributions.  With a potential collective of this size, there will inevitably be returned notices as well as uncashed checks.  Potential class participants routinely contact counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation for their individual awards, and the anticipated timeline for receiving payment.  The demands on Plaintiffs' Counsel in administering a settlement of this size is of no small undertaking. Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.    <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.


Respectfully submitted,

*s/ Kevin M. McDermott II*

Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiff*

*s/ Amanda L. Walls (via email consent)*

Amanda L. Walls (Ohio Bar #0080195)
AWalls@PetersonMyers.com
P. O. Box 24628
Lakeland, FL 33802-4628
Telephone: (863) 683-6511
Facsimile: (863) 682-8031

*Attorneys for Defendants*

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties indicated on the electronic filing receipt.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS**

I, undersigned counsel, state that this matter has been assigned to the standard track, and I hereby certify that the memorandum contained herein complies with the page limitations established by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation."

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)
